**Virginia K. McCANN, Petitioner,**

v.

**UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 16, 1998.

Decided Dec. 11, 1998.

As Amended Jan. 5, 1999.

Donald Marritz, Gettysburg, for petitioner.

Roger H. Caffier, Harrisburg, for respondent.

Before COLINS, President Judge, and DOYLE, J., McGINLEY, J., SMITH, J., PELLEGRINI, J., FRIEDMAN, J. and LEADBETTER, J.

PELLEGRINI, Judge.

Before the Court is Virginia K. McCann's (McCann) motion that counsel fees be assessed against the Unemployment Compensation Board of Review (Board) pursuant to Pennsylvania Rule of Appellate Procedure 2744.[1] In *McCann v. Unemployment Compensation Board of Review* (No. 2658 C.D. 1996, filed March 26, 1997), this Court reversed the Board's order that denied McCann unemployment compensation benefits. In her motion for counsel fees, McCann contends that fees may be assessed against

---

1. Pa. R.A.P. 2744 provides that:

    In addition to other costs allowable by general rule or Act of Assembly, an appellate court may award as further costs damages as may be just including:

    (1) a reasonable counsel fee and

    (2) damages for delay at the rate of 6% per annum in addition to legal interest,

if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious. The appellate court may remand the case to the trial court to determine the amount of damages authorized by this rule. *See also* 42 Pa. C.S. §2503.

the Board, an administrative tribunal, for its obdurate, dilatory or vexatious conduct in defending its decision on appeal to this Court, and that the Board's conduct in this case warrants an assessment of counsel fees in her favor.

In the underlying appeal on the merits, McCann had appealed from a decision of the Board denying her benefits under Section 402(e) of the Unemployment Compensation Law [2] (Law). McCann had worked for CR's Friendly Market (Employer) as a cashier until she was terminated on April 30, 1996, for allegedly going into the purse of another employee without permission. McCann applied for unemployment compensation benefits, which were initially denied by the Office of Employment Security, and she appealed to the Referee. Before the Referee, Employer offered the testimony of Gregory Golden (Golden), the store manager at the store at which McCann had worked, who testified that he had been informed by an employee that McCann had allegedly gone through her purse and had shown a two dollar bill she found in her purse to another employee.[3] Golden admitted that he had not witnessed the incident but had only heard of it from McCann's co-workers. Employer also introduced an unsworn signed statement by another employee-witness stating that he had seen McCann searching through the purse of an employee for a two dollar bill that had previously been in the cash register drawer.

During her testimony before the Referee, McCann admitted that she had looked into the purse of her fellow employee and had seen a two dollar bill that she showed to that employee and inquired as to how she had obtained that bill. However, McCann stated that she only had seen the two dollar bill because the side pocket of the employee's purse was open and not because she had searched through or opened the employee's

purse. The Referee concluded that Employer had offered no evidence to establish that McCann had engaged in willful misconduct and awarded benefits accordingly.

Employer appealed to the Board which found:

- Claimant did intentionally and purposefully look into the personal property of her co-worker, a purse.

- Claimant did not have good cause for looking into her co-worker's purse.

- Claimant knew or should have knows [sic] that such would be considered an invasion of the co-worker's privacy.

Citing McCann's admission that she had seen the two dollar bill in the employee's purse, the Board rejected as incredible her statement that the side pocket of the purse was open and denied her benefits based on its conclusion that her behavior constituted willful misconduct.

McCann appealed to this Court and we reversed, holding that the only evidence presented by Employer was hearsay evidence [4] consisting of Golden's testimony of what an employee had told him and an unsworn statement it submitted from one of McCann's co-workers. Essentially abandoning its conclusion that substantial evidence existed to find that McCann searched through the purse, the Board then raised the argument that the mere showing of the two dollar bill to another employee constituted willful misconduct. The Board argued that "[e]ven if [McCann] saw the contents of her co-worker's purse by chance, she did not thereafter have carte blanche to disclose said contents to others, especially when that disclosure was designed to further a perceived personal pecuniary gain." It also argued:

At *minimum*, Claimant admits to accidentally viewing a content of a co-worker's

---

2. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e). Section 402(e) of the Law provides:

    An employe shall be ineligible for compensation for any week –
    (e) In which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work.

3. McCann had allegedly gone through her co-worker's purse looking for a two dollar bill that had previously been in the cash register drawer and which she had sought to purchase.

4. The Board responded that the hearsay was sufficiently corroborated and the circumstantial evidence sufficiently persuasive to sustain its findings of fact.

purse... We cannot fault a claimant for accidentally viewing the contents of a co-worker's purse. However, it is a far more serious matter to knowingly convey that accidentally viewed private information to a third party while pursuing a prospective personal economic interest. Put succinctly, Claimant violated her co-worker's privacy in an attempt to pursue her desire to acquire the unusual bill in Employer's register. This, of course, is relevant to be [sic] inquiry as to whether Claimant had good cause to act as she did. (Emphasis in original).

The Board went on to argue that revealing another employee's personal information as here would result in a finding of willful misconduct.

Although the Board rejected McCann's testimony as not credible, we held that substantial evidence did not support the Board's finding of willful misconduct because Employer had the burden to prove willful misconduct and because all of the testimony was hearsay. In reversing the denial of benefits and rejecting the Board's argument, we stated:

The Board essentially agrees that there is no substantial evidence in the record to support a finding that [McCann] intentionally searched a fellow employee's purse. Instead of agreeing with [McCann's] arguments and withdrawing its opposition thereto, the Board contends that [McCann] had nevertheless engaged in willful misconduct by showing the two dollar bill to her co-worker. However, Employer did not raise McCann's showing the two dollar bill to a co-worker as a basis for her discharge, there was no work rule prohibiting such conduct on the part of Claimant, and the Board, in its decision, did not state

that such conduct was the basis for its determination that Claimant had engaged in willful misconduct. As such, the Board is precluded from raising that issue as grounds for discharge for the first time on appeal and we refuse to consider the Board's argument on that issue.

Significantly, we went on to note that:

In the past, when its decision was unsupported by the record, the Board indicated as such and withdrew its opposition to the Claimant's appeal rather than proceed on the merits. Here, however, the Board raises a different reason for [McCann's] discharge than it did in its decision, i.e., that Claimant had shown the two dollar bill to her co-worker, in a last ditch effort to justify its otherwise insupportable action.

Based on that comment, Claimant then filed her request for counsel fees [5] pursuant to Pa. R.A.P. 2744, which provides that this Court may award a party reasonable counsel fees "if it determines that an appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious."

■ McCann initially contends that counsel fees may be imposed against the Board regardless of its prior role as a tribunal because it acted as a litigant in the appeal before this Court. The Board contends that it should not be liable for counsel fees because it is immune from liability for its conduct as a tribunal when making a determination and because it is an involuntary respondent before the court under Pa. R.A.P. 1513(b), requiring generally that the government unit which made the determination under review be named as a respondent.[6]

---

5. By order entered in this matter on April 29, 1997, we stated that McCann's motion for counsel fees would be scheduled for oral argument. By the terms of the order, "[t]he issue to be addressed is whether fees can be awarded in defense of a tribunal decision under [Pa. R.A.P.] 2744." Although McCann initially argued that she was entitled to costs under Pa. R.A.P. 2741 and counsel fees under Pa. R.A.P. 2744, the Court's order specifically limited argument to the counsel fees issue only. In any event, on reargument, McCann abandoned any contention that she is entitled to costs under Pa. R.A.P. 2741.

6. Also arguing before this Court as Amicus Curiae and supporting the Board's position is the Office of General Counsel (General Counsel) and the Industrial Board. The Board, General Counsel and Industrial Board argue that the Board is immune from liability for counsel fees under the doctrine of sovereign immunity. At issue here is not a claim against the Commonwealth but a request for counsel fees associated with the litigation. *See City of Pittsburgh v. Commonwealth, Department of Transportation,* 41 Pa.Cmwlth. 247, 399 A.2d 141 (Pa.Cmwlth.1979).

Both the Board and General Counsel rely on *Arbuckle v. Unemployment Compensation Board of Review,* 84 Pa.Cmwlth. 145, 478 A.2d 545 (Pa.Cmwlth.1984) to support their contention that counsel fees under Pa. R.A.P. 2744 cannot be imposed against an administrative tribunal such as the Board. In *Arbuckle,* we considered whether *costs* could be imposed upon the Board as a losing party pursuant to Pa. R.A.P. 2741. That rule provides that "except as otherwise provided by law, when an appellant is successful, costs shall be taxed against the appellee." Pa. R.A.P. 2741. Although we determined that as a general matter, Pa. R.A.P. 2741 permits a court to impose the costs of an appeal on the Commonwealth as a losing party, we declined to apply that rule to a Commonwealth party who had performed an adjudicative function in the underlying matter. We held that "if we were to impose costs upon the Board, we would, in effect, be taxing costs against a judicial body for rendering a decision which was later held to be incorrect." *Arbuckle,* 478 A.2d at 548.

While it is true that if Pa. R.A.P. 2741 costs were imposed against the Board, it could be penalized simply as a result of its decision. However, unlike Pa. R.A.P. 2741, Pa. R.A.P. 2744 imposes counsel fees based upon *conduct,* not merely upon *result.* Therefore, under Pa. R.A.P. 2744, before the Board can be held responsible for counsel fees, irrespective of whether it was successful on appeal, there must be a showing that its *conduct* was "dilatory, obdurate or vexatious." Unlike in *Arbuckle,* there is no possibility here that the Board will be held liable for costs or penalized due to its adjudicatory

function. It is only when the Board's conduct as a party litigant rises to the level of "dilatory, obdurate or vexatious" that counsel fees may be imposed. Accordingly, *Arbuckle* is not controlling here.[7]

Other state courts that have addressed whether counsel fees should be imposed upon an administrative tribunal point out that these agencies are not only tribunals, but are also participants in the litigation. In *Brown v. Adult Family Services,* 293 Or. 6, 643 P.2d 1266 (1982), *on remand, Davidson v. Employment Division,* 63 Or.App. 600, 666 P.2d 261 (1983), the Supreme Court of Oregon considered the issue of whether counsel fees could be imposed against the Employment Division, an entity similar to that of our Board, which acted as both a party and adjudicator in the underlying litigation. That court held:

> *[t]o say that the Employment Division has only a disinterested adjudicatory role is not in accord with reality.* We believe that to let those aspects of the Division's role which are quasi-judicial control to the exclusion of the Division's activities as a party violates the legislative intent underlying ORS 183.495[8] ... the statute vests discretion to award attorney fees in the Court of Appeals and we believe that this vesting of discretion implies that in appropriate cases attorney fees will be awarded. The rule which the Court of Appeals has established [in the underlying case] declares, in effect, that with the Employment division there are no appropriate cases. We do not think that the statute condones such a blanket policy. Whether an award of attorney fees is to be made ... is still a

7. Although Judge Smith's dissent relies on *Arbuckle,* that case only dealt with record costs and did not address whether the Board's conduct was obdurate, dilatory or vexatious. Similarly, Section 3 of the Act of December 13, 1982, P.L. 1127, *as amended,* 71 P.S. §2033, imposes counsel fees merely because a party prevails, while Pa. R.A.P. 2744 awards counsel fees and costs based solely on conduct before the Court. Finally, as to the impact of this decision, every other entity in this Commonwealth including local governments, state agencies, corporations and citizens, are subject to this rule without disruption in this Court's process. If we were to hold in a significant number of cases that agencies were engaged in obdurate, vexatious or dilatory con-

duct in the processing of cases, (unlikely), then the burden on this Court, if any, would ultimately be well worth the effort to prevent needless appeals. More importantly, it would have the salutary effect of having adjudicative agencies defend their decisions and would not allow them to turn them into advocates for one side by raising new issues not raised by the parties before them.

8. ORS 183.495 provides that "[u]pon judicial review of a final order of an agency when the reviewing court reverses or remands the order it may, in its discretion, award costs, including reasonable attorney's fees, to the petitioner to be paid from the funds appropriated to the agency."

matter to be entrusted to the discretion of the Court of Appeals. (Emphasis added).
293 Or. at 14, 643 P.2d at 1270.

The Supreme Court of Arizona has likewise considered the issue of whether an award of attorney fees against a state agency charged with administration of a legislative enactment, which includes a quasi-judicial function and is a party to such a case on appeal, could be awarded under its applicable statutes. In *Cortaro Water Users' Association v. Steiner*, 148 Ariz. 314, 714 P.2d 807 (1986), the Supreme Court of Arizona held that where the Department of Water Resources, a state agency, acted as both an administrative agency and a party defendant, no attorney fees were to be awarded against the state at the administrative level because at that level, "the agency is acting essentially as a trial judge in a quasi-judicial capacity," not "pursuant to its prosecutorial power." *Id.* 148 Ariz. at 318, 714 P.2d at 811. However, that court held that the dual roles should be analyzed separately because agencies can act as both prosecutors and adjudicators, and once the Department undertook a role as an advocate or party in the appeal, if unsuccessful, it could be financially responsible for attorney fees pursuant to the applicable Arizona statutes.[9]

Applying the rationale of *Brown* and *Cortaro* to the instant case, where counsel fees are authorized by Pa. R.A.P 2744, they can be imposed against an agency acting in a dual function as a quasi-judicial agency and a litigant. Just because the Board acted as a tribunal in the appeal below is of no consequence when it comes before this Court as a party participant. Even if the Board was required to act as a party[10] before this Court pursuant to Pa. R.A.P. 1513(b), it was not relieved of its obligation to pay counsel fees where applicable under Pa. R.A.P 2744, because nothing in Pa. R.A.P. 1513(b) controlled its conduct as a party before this Court. If, as a party participant, it engages in obdurate conduct, it should suffer the same consequences as any other party participant and should not escape liability for the successful party's counsel fees merely because it acted at some point as an adjudicatory body when it appeared before us as an advocate, not as some disinterested party.[11]

■ Because we have determined that counsel fees may be assessed against the Board where it engages in obdurate, vexatious or dilatory conduct, we must now reach the issue of whether the Board's conduct here constituted such conduct. Pursuant to Pa. R.A.P. 2744, counsel fees may be awarded against a party if we determine that the "appeal is frivolous or taken solely for delay or that the conduct of the participant against whom costs are to be imposed is dilatory, obdurate or vexatious." An appeal is "frivolous" where it lacks any basis in law or fact. *Thunberg v. Strause*, 545 Pa. 607, 682 A.2d 295 (1996). Obdurate conduct includes the act of being "stubbornly persistent in wrong-

---

9. A.R.S. §12–348(A)(3) provides:

> In addition to any costs which are awarded as prescribed by statute, a court shall award fees and other expenses to any party other than this state or a city, town or county which prevails by an adjudication on the merits in any of the following:
>
> A court proceeding to review a state agency decision, pursuant to chapter 7, article 6 of this title, or any other statute authorizing judicial review of an agency decision.

And, pursuant to A.R.S. §908, in an action to review a final decision of an administrative agency, the agency must be made a party defendant to the appeal so that the Arizona Department of Water Resources was an indispensable party in this appeal.

10. *See Smith v. Board of Probation & Parole*, 524 Pa. 500, 574 A.2d 558 (1990), where our Supreme Court held that for the purposes of assessing attorney fees and costs for a frivolous appeal, despite the constitutional right to counsel in an appeal from a criminal conviction, costs and attorney fees may be assessed against a court-appointed appellate counsel for filing a frivolous appeal.

11. If the Board were really nothing more than a disinterested party, then under Pa. R.A.P. 1513(b), it would not be required to be named as a respondent. Pa. R.A.P. 1513(b) provides:

> The government unit which made the determination sought to be reviewed, and no other party, shall be named as a respondent, *except where the petition seeks review of an order of a government unit which is in fact disinterested in the subject matter of the order, in which case all real parties in interest before such government unit shall be named as respondents and the governmental unit shall not be named as a respondent.* (Emphasis added).

doing." *Webster's Ninth New Collegiate Dictionary* 814 (1989). "Vexatious" conduct has been defined as that which is "without sufficient grounds and serving only to cause annoyance." *Santoro v. City of Philadelphia,* 59 Pa.Cmwlth. 114, 429 A.2d 113, 117 (Pa.Cmwlth.1981).

McCann alleges that the Board acted in a frivolous, dilatory, obdurate and vexatious manner in a non-adjudicatory fashion by raising reasons not relied on in its opinion. By contending for the first time before this Court that her showing the two dollar bill to a co-worker was grounds for her discharge, McCann contends that the imposition of counsel fees pursuant to Pa. R.A.P. 2744 is warranted.

Had the Board merely defended its findings and conclusions rendered in its opinion denying benefits before this Court, even if legally unsupportable, counsel fees would not have been warranted. However, rather than defend its findings, the Board assumed the position of advocate, changing theories on appeal to contend for the first time that even if McCann had accidentally viewed the two dollar bill, her subsequent actions in informing a co-worker of what she had seen constituted an invasion of her co-worker's privacy and was done solely for her own pecuniary interests and for *that* reason rose to the level of willful misconduct. Because the Board acted in a vexatious and obdurate manner in abandoning its holding of misconduct and acting as an advocate, raising an equally unsupportable new theory on appeal, we agree with McCann that counsel fees should be imposed against the Board pursuant to Pa. R.A.P. 2744.[12]

Accordingly, McCann's request for counsel fees is granted.

***ORDER***

AND NOW, this 11th day of December, 1998, the motion for counsel fees filed by Virginia K. McCann, No. 2658 C.D.1996, is granted. An itemized bill for counsel fees shall be submitted within thirty days. The Board has twenty days to respond to the request for fees.

Dissenting opinion by Judge SMITH in which Judge DOYLE joins.

Dissenting opinion by Judge LEADBETTER.

SMITH, Judge, dissenting.

I respectfully dissent. The majority states that this Court's en banc decision in *Arbuckle v. Unemployment Compensation Board of Review,* 84 Pa.Cmwlth. 145, 478 A.2d 545 (1984), should be distinguished and its reasoning not applied in this case because *Arbuckle* involved a request for costs of litigation under Pa. R.A.P. 2741 rather than a request for attorney's fees pursuant to Pa. R.A.P. 2744. Rule 2741 costs are awarded as a matter of course to the party that prevails in an appeal, and Rule 2744 requires proof that the participant against whom such fees are awarded engaged in conduct that was dilatory, obdurate or vexatious. However, *Arbuckle* did not rest on so narrow a foundation, and I believe that its rationale is applicable to the present case as well.

12. The dissent contends that because an appellate court may affirm a decision on a different ground than that relied upon by the tribunal under review, the Board, in its role as advocate as in this case, can urge this court to affirm on other grounds without counsel fees being imposed for conduct that is considered vexatious or obdurate. However, even if we found the Board was acting as an advocate when it defended its position in Claimant's appeal to this Court, the Employer in this case never defended its termination of Claimant before the Referee or on appeal to the Board by arguing that when she revealed another employee's personal information, she was guilty of willful misconduct. Because that argument was never raised before the Referee by the Employer, who was the party named as the defendant, that issue was forever waived on appeal to the Board. Because it was waived before the Board, the Board could not raise it before this Court. *See* Pa. R.A.P. 1551. Although the dissent believes the Board's action of arguing a novel argument on appeal was no different than that action taken by other appellees, the Board was acting as a tribunal and we can find no justification for allowing it to raise a novel argument on appeal to this Court to justify its unsupportable action. As we noted earlier in this opinion, in the past, the Board withdrew its opposition to a claimant's appeal when its decision was unsupported by the record and its failure to do so here constituted obdurate and vexatious conduct.

In *Arbuckle* the Unemployment Compensation Board of Review (Board) reversed a referee's decision and denied benefits to a claimant who was terminated for not reporting to work on the day before his wedding, where the employer previously approved his absence then revoked the approval at the last minute. This Court reversed the Board on the merits, but the Court denied the claimant's request for an award of costs, noting the following:

In deciding this case, we have considered several significant facts:

1. The Board is a quasi-judicial body with no rule or policy-making function.

2. The Board was required to enter this litigation as a respondent as part of Claimant's appeal from the Board's decision.

3. The Employer, who in essence initiated this litigation and acted as Claimant's adversary party before the referee and the Board, is no longer a party. Thus, the Employer is not available for the court to impose costs against it.

4. No statute or rule explicitly authorizes the imposition of costs on an adjudicatory board of a Commonwealth agency which has not initiated the action.

5. In 1983, the Board was named as respondent in over 700 cases appealed to this court.

6. The Board represents the public interest in appeals from its decisions.

*Arbuckle,* 84 Pa.Cmwlth. at 140–149, 478 A.2d at 547 (footnotes omitted).

The Court distinguished *Baehr Brothers v. Commonwealth,* 493 Pa. 417, 426 A.2d 1086 (1981) (affirming by an equally divided court), upon which the claimant relied, noting that the approval of costs in that case was against the Department of Revenue, which had imposed an unlawful tax, not against the Board of Finance and Revenue, which was the adjudicatory body analogous to the Board. The Court concluded that granting the claimant's request would be, in effect, taxing costs against a judicial body for rendering a decision that was later held to be incorrect.

Generally, a litigant cannot recover attorney's fees unless there is express statutory authorization, a clear agreement of the parties or some other established exception. *Snyder v. Snyder,* 533 Pa. 203, 620 A.2d 1133 (1993). In a footnote the Court in *Arbuckle* provided an example of a statute explicitly authorizing attorney's fees and expenses against a Commonwealth agency. Section 3 of the Act of December 13, 1982, P.L. 1127, *as amended,* 71 P.S. §2033, relating to awards of fees and expenses in certain agency actions, provides:

(a) Except as otherwise provided or prohibited by law, a Commonwealth agency *that initiates an adversary adjudication* shall award to a prevailing party, other than the Commonwealth, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer finds that the position of the agency, as a party to the proceeding, was substantially justified or that special circumstances make an award unjust. (Emphasis added.)

In my view *Arbuckle* implicitly, and correctly, concluded that where the legislature has specifically provided for imposition of costs and fees against an agency in particular circumstances, it did not intend for adjudicative agencies to be subject to such costs and fees through the imposition of general rules.

The majority relies upon cases from other jurisdictions for the rationale that an agency such as the Board, once it is present before this Court on an appeal from its order, no longer acts as a quasi-judicial body but rather functions as an advocate. As the majority acknowledges, however, the holdings in those cases that the agencies could be subject to an award of attorney's fees were based upon the existence of statutes expressly providing for awards of costs and fees in such circumstances. The Supreme Court of Oregon in *Brown v. Adult and Family Services,* 293 Or. 6, 643 P.2d 1266 (1982), framed the issue as the scope of the discretion of the intermediary appellate court to award attorney's fees under Or.Rev.Stat. § 183.495: "'Upon judicial review of a final order of an agency when the reviewing court reverses or remands the order it may, in its discretion, award costs,

including reasonable attorney's fees, to the petitioner to be paid from the funds appropriated to the agency.'" *Brown*, 293 Or. at 8, 643 P.2d at 1267.

The court affirmed denials of requests for fees in three of four consolidated cases and remanded one of them. It rejected the petitioners' assertion, based upon an interpretation of an inapplicable section and upon a policy argument of assuring broad access to review, that attorney's fees should be awarded largely as a matter of right. Instead, the court concluded that the terms of the statute assigned broad discretion to the court of appeals. Regarding the one case as to which fees had been denied based upon the quasi-judicial role of the body similar to the Board, the court did conclude that its role was not as truly disinterested as was, for example, that of the state labor relations board acting as arbiter in a dispute between a municipality and a union. The court remanded for development and application of a standard under the statute.

The Supreme Court of Arizona, in *Cortaro Water Users' Ass'n v. Steiner*, 148 Ariz. 314, 714 P.2d 807 (1986), considered whether Ariz. Rev.Stat. §12–348(A)(3) authorizes an award of attorney's fees against a state agency that is charged with administration of a legislative enactment, including a quasi-judicial function, and that is party to an appeal of such a case pursuant to statute. Section 12–348(A)(3) provides that in addition to any costs awarded as prescribed by statute, "a court shall award fees and other expenses to any party other than this state or a city, town or county which prevails by an adjudication on the merits" of proceedings including "[a] court proceeding to review a state agency decision...." The court concluded that where the Department of Water Resources participated in an appeal beyond the administrative adjudication level by doing more than certifying the record for review, it was functioning as an advocate and was liable for an award of attorney's fees under the statute, which were mandatory unless an enumerated exception applied.

The decisions in *Brown* and *Cortaro Water Users' Ass'n* support the majority's characterization of an agency's advocacy on appeal as a role distinct from its quasi-judicial function. Nevertheless, the results in these cases depend entirely upon the existence of statutes expressly providing for awards of attorney's fees against agencies. In the present case, no similar Pennsylvania statute has been invoked.

Finally, I note that the decision of the majority creates the potential for unnecessary confusion and disruption in this Court's appellate jurisdiction. The majority's approach may well lead to applications for attorney's fees against agencies in many cases where the agency is named as the respondent under Pa. R.A.P. 1513(b). This Rule provides in general:

> The government unit which made the determination sought to be reviewed, and no other party, shall be named as respondent, except where the petition seeks review of an order of a government unit which is in fact disinterested in the subject matter of the order, in which case all real parties in interest before such government unit shall be named as respondents and the government unit shall not be named as a respondent.

This potential applies to appeals from decisions of local agencies such as zoning hearing boards and civil service commission's as well as to those of Commonwealth agencies. The majority characterizes the Board's advancing an argument on appeal that was not contained in its opinion as "conduct" subject to an award of fees under Pa. R.A.P. 2744 and states that fees are not being awarded here based simply on a contention that the Board's decision was in error. I disagree that litigants are likely to respect this fine distinction and refrain from making applications for fees whenever they regard an agency decision or argument on appeal as being particularly erroneous.

This Court should take particular note of one final point indicated in *Arbuckle:* in 1983, the Board was named as a respondent in over 700 appeals. For 1997 that number was 552, but for 1995 it was 1,105, and the Board is only one of many agencies that are brought before this Court as respondents in appeals from their adjudications. These figures convey the magnitude and the potential

ramifications of the majority's decision in this case.

Judge DOYLE joins in this dissenting opinion.

LEADBETTER, Judge, dissenting.

I join fully in the majority's well-reasoned analysis of the applicable law concerning the Board's exposure to liability for fees, costs and sanctions under the various rules of appellate procedure. I must respectfully dissent, however, from the imposition of fees in this case.

It is a long-established principle that an appellate court may affirm a decision on a different ground than that relied upon by the tribunal under review. *In re Class Action Appeal of Mackey,* 687 A.2d 1186, 1189 n. 8 (Pa.Cmwlth.1997); *Bell Atlantic Mobile Sys., Inc. v. Borough of Baldwin,* 677 A.2d 363, 367 n. 2 (Pa.Cmwlth.1996).

The Board, in its role as advocate in this case, did no more than urge this court to affirm on other grounds, a position frequently taken by appellees. I see nothing vexatious nor obdurate in an appellee's making such an argument, and I would not distinguish in this regard between the Board and an appellee which was an advocate at all stages of the proceedings. Accordingly, I would not impose sanctions in this case.